# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HUSAM KAMIL ALZEHERY,

Defendant-Appellant.

UNPUBLISHED
January 18, 2018

No. 335632
Wayne Circuit Court
LC No. 16-005105-01-FH

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of possession with intent to deliver dihydrocodeinone, MCL 333.7401(2)(b)(*ii*), possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to one to seven years' imprisonment for the possession with intent to deliver dihydrocodeinone conviction and 126 days, time served, for the possession with intent to deliver marijuana conviction, to run consecutively to the mandatory two-year sentence of imprisonment for the felony-firearm conviction. We affirm.

Defendant first argues that there was insufficient evidence to convict him of possession with intent to deliver dihydrocodeinone. We disagree.

A defendant's claim that there was insufficient evidence in a bench trial to support his or her conviction is reviewed de novo. *People v Ventura*, 316 Mich App 671, 678; 894 NW2d 108 (2016). In doing so, this Court views the evidence in a light most favorable to the prosecution to determine whether the trial court could have found that each element of the charged crime was proven beyond a reasonable doubt. *Id*. "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). It is the role of the trier of fact to determine the weight of the evidence and the credibility of the witnesses. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Defendant's argument challenging the sufficiency of the evidence for his conviction of possession with intent to deliver dihydrocodeinone is two-pronged. First, defendant argues that there was no evidence presented that classified the dihydrocodeinone pills found in his home as a schedule 1, 2, or 3 substance as set forth in MCL 333.7401(2)(b)(*ii*). Next, defendant contends

that the prosecution failed to show that defendant both illegally possessed the pills found in his house and that he intended to deliver them.

MCL 333.7401(1) states, in relevant part, that, "a person shall not . . . possess with intent to . . . deliver a controlled substance." An individual who possesses with intent to deliver a "controlled substance classified in schedule 1, 2, or 3, except marihuana or a substance listed in section 7212(1)(d), is guilty of a felony. . . ." MCL 333.7401(2)(b)(*ii*). Dihydrocodeinone is a schedule 3 substance. MCL 333.7216(1)(g)(*iii*)-(*v*).

Defendant argues that without specific testimony on this issue, the "trier of fact was left to speculate that the drug compound was a scheduled drug under either schedule 1, 2 or 3." The record belies defendant's claim. The parties stipulated that Michigan State Police Forensic Scientist Holly Proulx tested yellow tablets marked V3601[1] found in a prescription bottle in defendant's home and determined they were dihydrocodeinone, also known as hydrocodone bitartrate-acetaminophen. MCL 333.7216(1)(g)(*iii*)-(*v*) specifically states that dihydrocodeinone is a schedule 3 substance. Therefore, the trial court did not err when it found that the dihydrocodeinone found in defendant's home was a scheduled substance.

Turning to the issue of possession and delivery, defendant claims that that pills at issue were prescribed by a physician to his girlfriend, Sheena Stout, and therefore there is no record evidence of his illegal possession with intent to deliver. In *People v Robar*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 335377); slip op at 5, this Court found that "the plain language of MCL 333.7401(1) does not support that possessing a valid prescription is relevant to whether a defendant committed the offense of possession with intent to deliver a controlled substance."

> [W]e conclude that MCL 333.7401(1) makes it a crime to possess a controlled substance, whether lawfully or not, *with the intent to deliver that substance* unless the person possessing the controlled substance either (1) has obtained a valid license to deliver the substance under MCL 333.7303(1) and (2), or (2) falls within one of the limited exceptions provide by MCL 333.7303(4) and (5). The statutory offense is aimed at preventing a person from possessing a controlled substance *with unlawful intent* regardless of whether the possession would otherwise be lawful absent this intent. [*Robar*, ___ Mich App at ___; slip op at 9-10 (citations omitted; emphasis in original).]

"Intent to deliver may be 'inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest.' " *Id*. at ___; slip op at 10, citing *People v Wolfe*, 440 Mich 508, 524; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[A] person is not criminally culpable under MCL 333.7401 for merely possessing a prescription medication; culpability arises when a person possessing a controlled substance displays overt actions showing an intent to unlawfully deliver the substance to someone else." *Robar*, ___ Mich App at ___; slip op at 10.

---

[1] These tablets were also referred to as Lortab pills.

On a coffee table in defendant's living room, Dearborn Police Officer Brandon Nichols found marijuana, hash oil, a scale, a marijuana grinder, a plastic bag that contained "unknown tablets" and a prescription bottle with pills inside of it, and a single prescription pill. Officer Nichols also found in defendant's living room a prescription bottle containing 92 Lortab pills, three Soma pills, and two Anexsia pills. Lortab is a Vicodin-family drug and is a hydrocodone and acetaminophen mixture. As noted above, the Lortab pills found in the prescription bottle were marked as V3601, Proulx tested them and determined they were dihydrocodeinone, also known as hydrocodone bitartrate-acetaminophen. The pill bottle holding the pills marked V3601 bore a prescription to Sheena Stout, defendant's girlfriend, ordered by the same physician who wrote a prescription for defendant affixed on another bottle. The labels on these two pill bottles were for Norco, but neither of the bottles contained Norco. On an end table in the living room, Officer Nichols found drug packaging, including a box of sandwich bags, and a prescription slip. The prescription slip was blank except for a signature from another physician.

Officer Nichols also found a notebook that he believed was a drug ledger underneath the couch in the living room. The notebook contained entries that were consistent with similar items Officer Nichols had seen in the past, including documentation on amounts of pills and the respective prices. Inside of a dresser drawer in the living room, Officer Nichols found three cellophane bags that contained a large number of resealable, smaller bags. The smaller bags were empty and did not contain drugs. Also inside of the dresser drawer in the living room, Officer Nichols found seven prescription labels for seven different drugs that were prescribed to defendant. The labels were not affixed to bottles, and the bottles to which the labels had been previously affixed were not in the living room dresser drawer. In Officer Nichols's experience, the discovery of prescription labels is common in cases involving the illegal sale and distribution of prescription pills. Therefore, on this record, ample evidence was presented to support the trial court's finding that defendant possessed the dihydrocodeinone with the intent to deliver it to others.

Defendant next argues that insufficient evidence was presented at trial to support his conviction of possession with intent to deliver marijuana. Specifically, defendant contends that the quantity of marijuana found in his home was inconsistent with an intent to deliver marijuana.[2] We disagree.

As relevant to our analysis, Corporal Daniel Goebel found a jar of marijuana, as well as a large bag and two smaller bags of marijuana, in the bathroom on the main floor of defendant's home. The large bag and jar of marijuana were found in the cabinet under the sink, while the two small bags of marijuana were found on the bathroom floor. Although not in the same room, a scale found in defendant's living room was in close proximity to the marijuana found in the

---

[2] To the extent defendant asserts that testing did not confirm that the suspected substance found in his living room was marijuana, we need not address the merits of this argument where the record confirms that 71.45 grams of marijuana was found in defendant's bathroom, and was of a sufficient amount to support defendant's conviction pursuant to MCL 333.7401(2)(d)(*iii*).

bathroom. Further, in Officer Nichols's experience, individuals have scales to weigh marijuana before selling it. Materials to package drugs were also found in the home, as was a drug ledger. Thus, on the basis of the record evidence, the trial court reasonably concluded that defendant possessed the marijuana with the intent to deliver it to others.

Defendant next argues that there was insufficient evidence to support his conviction of felony-firearm. Specifically, defendant challenges whether the rifle found in his home was a "firearm" as contemplated by the felony-firearm statute where it was allegedly inoperable. Defendant also contends that there was insufficient evidence that he was in possession of the rifle. We disagree.

In *People v Peals*, 476 Mich 636, 638; 720 NW2d 196 (2006), the Michigan Supreme Court held:

> [T]he text of the statutory definition[3] indicates that a weapon is a firearm if it is the type of weapon that was designed or intended to propel a dangerous projectile by an explosive, gas, or air. The definition describes the category of weapons that constitute a "firearm," but it does not prescribe a requirement that the weapon be "operable" or "reasonably or readily repairable." In other words, the design and construction of the weapon, rather than its state of operability, are relevant in determining whether it is a "firearm." [Footnote added.]

The prosecution presented sufficient evidence to allow the trial court to reasonably conclude that the rifle found in defendant's home was a "firearm" for purposes of the felony-firearm statute. Dearborn Police Sergeant Jeremy Long testified that the rifle was a Remington .22 rifle, a "relatively small caliber gun." Although he never fired the weapon and there was no ammunition found in it, Sergeant Long testified that the gun "appear[ed] to be in working order." Sergeant Long also testified that the gun appeared to have its firing pin intact. Thus, the trial court correctly concluded that the rifle was a "firearm" as contemplated by MCL 750.222(e).

Turning to defendant's possession of the firearm, pursuant to MCL 750.227b, a defendant is guilty of felony-firearm where that "defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016) (citation and quotation marks omitted). To be convicted of a possessory crime in Michigan, a defendant need not actually possess a firearm; "constructive possession is sufficient." *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). To determine whether a defendant had constructive possession, this Court must ask whether " 'the totality of the circumstances indicates a sufficient nexus between defendant and the contraband.' " *Id*. at 91-92, quoting *People v Johnson*, 466 Mich 491, 500; 647 NW2d 480 (2002). "Although not in actual possession, a person has constructive possession if he knowingly has the power and the

---

[3] The Michigan Supreme Court was construing the language of then MCL 750.222(d). *Peals*, 476 Mich at 640. The language of the statute has been amended subsequent to the Court's decision in *Peals*, see 2012 PA 242, 2015 PA 28, and the relevant statute is now MCL 750.222(e)(e), but the amendments are not dispositive to our analysis.

intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. . . ." *Minch*, 493 Mich at 92 (citation and quotation marks omitted). Put another way, " '[a] person has constructive possession if there is proximity to the article together with indicia of control.' " *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011), quoting *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989). That is, " 'a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant.' " *Johnson*, 293 Mich App at 83, quoting *Hill*, 433 Mich at 470-471. "Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact." *Johnson*, 293 Mich App at 83.

Our review of the record confirms that ample evidence supported the trial court's conclusion that defendant possessed the Remington .22 rifle the police found in his living room. Testimony at trial demonstrated that defendant owned the house at 6607 Montrose, and that he lived there with Stout. While defendant was not physically in possession of the rifle when police entered his home, the record supports a finding of constructive possession. Specifically, when Sergeant Long entered defendant's home during the execution of the search warrant, defendant was on the ground near the couch in the living room, and the rifle was affixed to the wall above the couch. Sergeant Long also stated that the firearm was easily removed from its position affixed to the wall. Where the rifle was reasonably accessible to defendant, who was in close proximity to it, the trial court properly concluded that defendant had constructive possession of the rifle. *Johnson*, 293 Mich App at 83.

Defendant next argues that he was denied the effective assistance of counsel. We disagree.

To preserve the issue of ineffective assistance of counsel, a defendant must request a new trial or an evidentiary hearing. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). Here, defendant did not request a new trial or an evidentiary hearing. Where a defendant fails to request a new trial or an evidentiary hearing, this Court's review is limited to the existing record. *Id*.[4]

"To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Counsel's performance should be evaluated at the time of the alleged error without the benefit of hindsight." *Solloway*, 316 Mich App at 188 (citation omitted). "A defendant must overcome a strong presumption that counsel's actions constituted sound trial strategy." *Id*. (citation

---

[4] "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012) (citation omitted).

omitted). "Defendant is required to show that trial counsel's performance prejudiced him enough to deprive him of a fair trial." *Id.*

The thrust of defendant's claims alleging ineffective assistance of counsel are that defense counsel did not properly seek immunity from prosecution or mount a defense pursuant to § § 4 and 8 of the Michigan Medical Marihuana Act, MCL 333.26421 *et seq.* Addressing first § 4 of the MMMA, to have availed himself of immunity from prosecution, defendant must have established that he "(1) was issued and possessed a valid registry identification card, (2) complied with the requisite volume limitations of § 4(a) and § 4(b), (3) stored any marijuana plants in an enclosed, locked facility, and (4) was engaged in the medical use of marijuana." *People v Hartwick*, 498 Mich 192, 217-218; 870 NW2d 37 (2015), citing MCL 333.26424(a) and (b).

The record evidence at trial established that defendant did not have a valid medical marijuana card on the day that he was arrested. Moreover, in his brief on appeal, defendant concedes that his medical marijuana card expired in 2015 and was not renewed until 2016. Because defendant cannot demonstrate that he "possessed a valid registry identification card," at the time of the incident giving rise to this prosecution, defendant is not entitled to immunity pursuant to § 4 of the MMMA. Where he did not meet the requirements of § 4 of the MMMA, trial counsel was not ineffective for declining to advance a meritless argument seeking immunity from prosecution. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Likewise, we reject defendant's argument that counsel was constitutionally infirm for not pursuing the affirmative defense of medical use of marijuana pursuant to § 8 of the MMMA. As opposed to § 4 of the MMMA, which grants immunity *from* prosecution, § 8 permits a defendant to assert an affirmative defense *in* a criminal prosecution. *Hartwick,* 498 Mich at 213. MCL 333.26428, provides, in relevant part:

(a) Except as provided in [MCL 333.26427], a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

-6-

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [Footnote omitted.]

A § 8 defense "must be raised in a pretrial motion for an evidentiary hearing." *People v Kolanek*, 491 Mich 382, 411; 817 NW2d 528 (2012). See also MCL 333.26428(b) (stating the same). "A defendant seeking to assert the MMMA's statutory affirmative defense must present prima facie evidence for each element of § 8(a)." *Hartwick*, 498 Mich at 228.

As defendant points out, the record reflects that defense counsel and the trial court may have misinterpreted the applicable law regarding the § 8 affirmative defense, confusing it with the immunity granted pursuant to § 4 of the MMMA. However, defendant is still unable to overcome the presumption that defense counsel's decision not to pursue a § 8 defense resulted from sound trial strategy. *Solloway*, 316 Mich App at 188. While defendant testified that he used marijuana to treat pain arising from dislocated shoulders and knees, he also testified that he had a concomitant professional relationship with a physician. The record reflects that this same physician was under investigation by the police, for reasons unclear from the record, at the time of trial. Thus, defense counsel may have reasonably surmised that pursuit of a § 8 defense would not be beneficial to defendant, as it would have invited the prosecution to delve more deeply into defendant's relationship with the physician under investigation. Additionally, the record confirms that a large volume of narcotics were found in defendant's home, together with the trappings of a narcotics distribution operation, including a marijuana grinder and scale, a drug ledger, and a Remington .22 gauge rifle mounted on the living room wall. Moreover, when police entered the home, Stout was observed attempting to flush marijuana down the toilet. On this record, defense counsel likely made the competent and reasonable estimation that any likelihood of the § 8 defense being accepted by the trial court in this bench trial as credible and successful was extremely unlikely. Such a decision does not amount to ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

Finally, defendant argues that the trial court's statements and conduct during trial amounted to judicial misconduct. We disagree.

In order to preserve the issue of judicial misconduct for appellate review, a defendant must object in the trial court. *People v Sardy*, 216 Mich App 111, 117; 549 NW2d 23 (1996). Defendant failed to object to the trial court's alleged misconduct in the trial court. Therefore, the issue was not properly preserved for appellate review. Where a defendant fails to preserve a claim of judicial bias in the trial court, this Court reviews the issue for plain error affecting a defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. The defendant has the burden of persuasion as it pertains to prejudice. *Id*. Once a defendant demonstrates the three

requirements, "an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted).

In *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015), the Michigan Supreme Court recognized:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury[5] by creating the appearance of advocacy or partiality against a party. *In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial.* [*Id*. at 164 (footnote and emphasis added).]

Defendant initially contends that the trial court usurped the prosecution's role as a prosecutor and repeatedly took control of questioning witnesses, thereby depriving him of a fair and impartial trial.

"It is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty." *People v Biddles*, 316 Mich App 148, 153; 896 NW2d 461 (2016), citing *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). "A court must 'exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.' " *Biddles*, 316 Mich App at 153-154, citing MRE 611(a).

---

[5] "On jury waiver, a judge 'shall proceed to hear, try and determine such cause in accordance with the rules and in like manner as if such cause were being tried before a jury.' In effect, the statute places the same standard of impartiality on the judge as the constitution places on the jury." *People v Walker*, 24 Mich App 360, 361; 180 NW2d 193 (1970), aff'd 385 Mich 596 (1971), quoting MCL 763.4.

Our review of the trial court's line of questioning confirms that the trial court did not engage in judicial misconduct.[6] Although the trial court engaged in extensive questioning of witnesses throughout trial, the trial court's questions were generally asked at the conclusion of direct or cross-examination or in order to clarify the testimony of witnesses and elicit additional relevant information. *Stevens*, 498 Mich at 173-174 ("[I]t is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." (Citation omitted.)) Although defendant complains that the trial court attempted to speed up this bench trial by taking "control of the prosecution's job of asking questions as to the evidence introduced, and what witnesses were needed to make her prima facie case," our review of the trial court's conduct simply demonstrate the trial court's desire to maintain efficiency during the trial court proceedings. *Biddles*, 316 Mich App at 153-154, citing MRE 611(a).

Defendant also challenges the trial court's comments following his motion for a directed verdict. We have closely reviewed the challenged comments, and when read in their totality, they do not reflect any bias or prejudice against defendant, but merely the trial court's apt recognition that defendant had not yet presented his case. Put simply, the trial court was simply informing defendant that it recognized the prosecution to have a strong case, and was open to hearing defendant's theory of the case.

Defendant further argues that the trial court's inquiry into Stout's guilty plea was impermissible for purposes of impeaching the witness's credibility. Specifically, defendant argues that the trial court violated MRE 609 when it questioned Stout about her guilty plea.

MRE 609, in relevant part, provides:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

> (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

---

[6] Other than a question by the trial court into Stout's guilty plea, which we will discuss subsequently in this opinion, defendant does not specify a particular question by the trial court that he claims amounts to judicial misconduct.

However, "MRE 609 is not applicable where evidence of prior convictions is offered to rebut specific testimony rather than to attack credibility in general." *People v Taylor*, 422 Mich 407, 417; 373 NW2d 579 (1985).

A review of the record confirms that Stout's guilty plea was offered to rebut her testimony rather than to mount an attack of her credibility. Specifically, Stout testified that she was in receipt of a valid prescription from a physician for all of her medications and, therefore, legally possessed the various pills found in defendant's home attributed to her. In response, during cross-examination, the prosecution inquired into Stout's guilty plea to possession of narcotics. There is no indication in the record that the trial court initiated the inquiry into Stout's guilty plea. Rather, the trial court sought to clarify Stout's testimony regarding her guilty plea. We are therefore not persuaded that the trial court's questioning of Stout was in any manner improper.

Defendant also contends that the trial court's closing remarks demonstrate bias against defendant. We have closely reviewed the comments that defendant points to, and conclude that they do not demonstrate any bias against defendant on the part of the trial court. Instead, the trial court's statements reflect its permissible assessment of the credibility of defendant, Stout, and the other witnesses at trial. See MCR 2.613(C) (stating that regard should "be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.").

Affirmed.


/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan