# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LORENZO ENRIQUE VENTURA,

        Defendant-Appellant.

FOR PUBLICATION
August 16, 2016
9:00 a.m.

No. 327289
Kent Circuit Court
LC No. 14-004661-FH

Before: MURRAY, P.J., and SAWYER and METER, JJ.

SAWYER, J.

This case presents an issue of first impression in Michigan, namely what constitutes a marijuana plant. More specifically, we must determine at what point does a cutting from a mature marijuana plant that is placed in "grow material" become a "plant" itself that may be separately counted as a plant for purposes of determining how many plants defendant had in his possession.

In this case, the Grand Rapids Police Department executed a search warrant at defendant's residence. In the "grow room" located on the main floor of the house, the officers found 21 marijuana plants plus 22 so-called "clone" plants. It is the clone plants that are at issue in this case. One of the officers involved in the search testified that a "clone" is a portion of a mature plant which is used to start a new plant. The officer testified that he pulled the clones out of the "grow material" that they were placed in and that some of the clones had hair-like fibers growing off the main root, with those fibers visible to the naked eye.

The search of the home also yielded a number of items related to the sale of marijuana: a digital scale with marijuana residue on it, an open box of sandwich bags, and a marijuana grinder. A purse was also found with a small bag of marijuana in it. Additional marijuana and marijuana seeds were also found in the home. Also during the search, defendant's wallet was located and it contained cards identifying defendant a medical marijuana patient and as a medical marijuana caregiver. During an interview, defendant stated that he had one additional patient for whom he was a medical marijuana caregiver. Under MCL 333.26424(a) and (b)(2), this allows defendant to possess up to 24 marijuana plants.

-1-

Defendant was charged, and convicted following a bench trial, of one count of possessing with intent to deliver marijuana and one count of manufacturing marijuana.[1] He was sentenced to 24 months' probation and 120 hours of community service. He now appeals and we affirm.

We turn first to the primary issue in this case, namely how many plants did defendant have in his possession. It is undisputed that defendant possessed at least 21 plants and that, under section 4 of the Michigan Medical Marijuana Act (MMMA),[2] he is immune from prosecution if he possess no more than 24 plants.[3] What is in dispute is whether the additional 22 clone plants should be considered plants as well. If they are considered to be individual plants themselves, then defendant exceeded the allowed amount by 19 plants. Defendant argues that the trial court erred in ruling that the clone plants constituted individual plants, thus finding defendant guilty of the charged offenses. In essence, defendant argues that the cuttings were still only leaves and had not yet become independent plants.

We begin by noting that the MMMA does not provide a definition of "plant." Nor are there any published opinions in this state that have interpreted the word "plant" as used in the MMMA. Moreover, resorting to the dictionary does not provide significant assistance. Merriam-Webster's Collegiate Dictionary (11th ed.) defines "plant" as follows: "a young tree, vine, shrub, or herb planted or suitable for planting." Thus, we are merely back to where we started: were these clones still just leaves or had they progressed to the point that they were suitable for planting?

While there are no cases in Michigan that provide assistance, there are decisions in other jurisdictions. In *United States v Edge*,[4] the Sixth Circuit, in determining what constitutes a marijuana plant for purposes of the federal sentencing guidelines, concluded that a "marijuana cutting is a 'plant' for federal sentencing purposes if there is readily observable evidence of root formation. A marijuana cutting with root balls or 'root hairs' easily meets this test." The court concluded that this definition would be easy to apply and comports with the plain and ordinary meaning of the statute.[5]

We also find guidance in *State v Schumacher*,[6] where the Idaho Court of Appeals determined what constituted a "plant" for purposes of determining the number of marijuana plants the defendant had in his possession. Similar to the Sixth Circuit's decision in *Edge*, the

---

[1] MCL 333.7401(2)(d)(iii) (less than five kilograms or fewer than 20 plants).

[2] MCL 333.26424(a) and (b)(2).

[3] MCL 333.26424 allows a registered patient to possess up to 12 plants and a registered caregiver to possess up to 12 plants per registered patient.

[4] *United States v Edge*, 989 F2d 871, 879 (CA 6, 1993).

[5] *Id.* at 878-879.

[6] *State v Schumacher*, 136 Idaho 509; 37 P3d 6 (Idaho App, 2001).

*Schumacher*[7] court concluded that a cutting becomes a "plant" when it has a readily observable root system:

> We think it clear that in ordinary usage, the word "plant" contemplates the presence of a root structure. In common parlance, one plant does not immediately become many plants as soon as it is cut into pieces, even if those pieces have been placed in soil or a growing medium. Therefore, we hold that for a cutting to achieve plant status, it must have readily observable evidence of root formation.
>
> Our decision is consonant with those of many federal courts that have been called upon to determine the meaning of "marijuana plant" for purposes of the federal sentencing guidelines. Those courts hold that root formation is necessary for a cutting to be counted as a plant. *See United States v Robinson*, 35 F3d 442, 446 (9th Cir. 1994); *United States v Burke*, 999 F2d 596, 601 (1st Cir. 1993); *United States v Edge*, 989 F2d 871, 879 (6th Cir. 1993); *United States v Bechtol*, 939 F2d 603, 605 (8th Cir. 1991); *United States v Eves*, 932 F2d 856, 860 (10th Cir. 1991). As noted by the Sixth Circuit Court of Appeals, this is a "commonsensical, easy to administer test." *Edge*, 989 F2d at 877. In applying it, "a court must be permitted to use its eyesight and common sense to conclude that it has before it a plant with roots." *Burke*, 999 F2d at 600.

We are satisfied that the "root formation" standard adopted by the Idaho Court of Appeals and the federal cases it replied upon is consistent with the plain and ordinary meaning of "plant" and we apply the same interpretation to the word "plant" as used in the MMMA.

Furthermore, the trial court employed a similar definition in reaching its decision. And, perhaps more importantly, it specifically found that only those plants with root systems could be and were counted:

> Probably the key ingredients in any plant would be some leaf material, some kind of stem, and some sort of root material. . . . And it seems to me once you have those components in place, you have a plant.
>
> * * *
>
> I'm inclined to agree with the detective's approach of only counting those . . . that had root systems. They, from the photographs, have leaves, they appear to be alive and healthy, unlike the five plants in the basement which have shriveled and died.
>
> So it seems to me the 22 so-called clones that had root structures and leaves and are green and are alive constitute plants. They're not very big plants

---

[7] 136 Idaho at 519-520.

and they're not mature plants, but the statute doesn't address that. It just says plants.

For these reasons, the trial court correctly concluded that defendant possessed a total 43 marijuana plants, which was more than the 24 allowed him under the MMMA. Accordingly, the trial court did not err in finding that defendant was not entitled to claim immunity under § 4 of the MMMA.

Next, we turn to defendant's challenge to the search warrant in this case. Specifically, defendant argues that the trial court should have suppressed the fruits of the search because there were material omissions in the affidavit in support of the search warrant. We disagree. In particular, defendant argues that the affidavit failed to mention that he was a qualifying patient under the MMMA as well as a caregiver. Thus, defendant argues, the delivery observed by the informant could have been defendant giving his patient a supply of marijuana.

This Court addressed this issue in *People v Brown*,[8] concluding that probable cause may be established without proving that the suspect's activities come within the MMMA:

> The possession, manufacture, use, creation, and delivery of marijuana remain illegal in this state, even after the enactment of the MMMA. Thus, we conclude that to establish probable cause, a search-warrant affidavit need not provide facts from which a magistrate could conclude that a suspect's marijuana-related activities are specifically not legal under the MMMA. Probable cause exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the stated place. [*Peope v*] *Kazmierczak*, 461 Mich [411,] 417-418 [605 NW2d 667 (2000)]. Defendant has presented no authority indicating that for probable cause to exist, there must be a substantial basis for inferring that defenses do not apply. See, generally, [*People v*] *Lemons*, 454 Mich [234] at 246 n 15 [; 562 NW2d 447 (1997)] (discussing affirmative defenses). We disagree with the trial court's holding pertaining to probable cause. Accordingly, we affirm the trial court on alternative grounds,[⁶] and defendant's issue regarding the good-faith exception to the exclusionary rule is moot. See *Contesti v Attorney General*, 164 Mich App 271, 278; 416 NW2d 410 (1987) (discussing mootness). [Footnotes omitted.]

Accordingly, the trial court did not err in refusing to suppress the evidence merely because the affidavit did not establish that defendant was not entitled to the immunity defense under § 4 of the MMMA.[9]

---

[8] *People v Brown*, 297 Mich App 670, 677; 825 NW2d 91 (2012).

[9] We also note that, as pointed out by the prosecutor, defendant was identified in the search warrant by description rather than by name. Thus, it is unclear how the police would be able to establish that defendant was a registered patient and caregiver in advance of the search.

Finally, defendant argues that the trial court erred in finding that he had delivered marijuana to another occupant of the house, Kelrick Traylor. We disagree. We review de novo a challenge to the sufficiency of the evidence in a bench trial, viewing the evidence in the light most favorable to the prosecution and determining whether the trial court could have found the essential elements proven beyond a reasonable doubt.[10] Defendant presents a brief argument in support of his position. Defendant first argues that there was insufficient evidence that he delivered marijuana to Traylor. But it is unnecessary to prove delivery, as the charge is supported by possession with the intent to deliver.[11] And defendant does not argue that there was insufficient evidence to support the conclusion that he possessed marijuana with the intent to deliver. Defendant also argues that the relevant material found in Traylor's room consisted of seeds, stems and residue, which are not considered "useable marijuana" under the MMMA.[12] But what constitutes "useable marijuana" under the MMMA is irrelevant to what constitutes marijuana under MCL 333.7401. The relevant definition is that contained in MCL 333.7106(4), which provides the following definition:

> "Marihuana" means all parts of the plant Cannabis sativa L., growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. Marihuana does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from those stalks, fiber, oil, or cake, or any sterilized seed of the plant that is incapable of germination. Marihuana does not include industrial hemp grown or cultivated, or both, for research purposes under the industrial hemp research act.

Accordingly, the material was, in fact, marijuana.

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Patrick M. Meter

---

[10] *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

[11] MCL 333.7401.

[12] See MCL 333.26423(k).