# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALENNA MARIE ROCAFORT,

        Defendant-Appellant.

UNPUBLISHED
January 2, 2018

No. 321804
Kent Circuit Court
LC No. 13-000391-FH

ON REMAND

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

MARKEY, P.J. (*dissenting*).

I respectfully dissent. I believe this case is controlled by this Court's binding precedent, *People v Carruthers*, 301 Mich App 590, 597; 837 NW2d 16 (2013), and even though the trial court may have erred regarding its determination that all of the seized marijuana was "usable" under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, the trial court reached the correct result; consequently, I would affirm.

This case returns to this Court after our Supreme Court vacated our prior opinion, *People v Rocafort*, unpublished opinion per curiam of the Court of Appeals, issued January 7, 2016 (Docket No. 321804) (*Rocafort I*). *People v Rocafort*, 501 Mich 867; 901 NW2d 396 (2017) (*Rocafort II*). The Supreme Court remanded this case to this Court for reconsideration in light of *People v Manuel*, 319 Mich App 291; 901 NW2d 118 (2017). Defendant was convicted after a jury trial of unlawful manufacture of marijuana, MCL 333.7401(2)(d)(*iii*) (less than five kilograms or fewer than 20 plants); unlawful possession of marijuana with intent to deliver, MCL 333.7401(2)(d)(*iii*); and knowingly keeping or maintaining a drug house, MCL 333.7405(d). Defendant was sentenced to 24 months' probation and appealed by right. This Court affirmed in *Rocafort I*, and on reconsideration in light of *Manuel*, I would again affirm.

Initially, I note that in her appeal by right, defendant presented three distinct claims of error related to the MMMA. Specifically, defendant argued: (1) that the trial court erred in finding that the seized marijuana was dried, and thus usable, in denying her motion to dismiss under § 4, MCL 333.26424; (2) that the trial court erred by instructing the jury that she had the burden of proving by a preponderance of the evidence the elements of her defense under § 8, MCL 333.26428; and (3) that the prosecution committed misconduct when during its closing

-1-

argument, it told the jury that defendant possessed an unreasonable amount of marijuana because she possessed an amount of marijuana that exceeded the amount permitted under § 4 of the MMMA. *Rocafort I* at 2-3, 5. After considering those arguments, this Court found no error warranting reversal. *Id*. at 7. I limit reconsideration to the first issue because *Manuel* held that the term "dried" in the MMMA definition of "usable marihuana," MCL 333.26423(n), means *completely* dry. See *Manuel*, 319 Mich App at 301-303. Moreover, our Supreme Court in vacating *Rocafort I* and remanding for reconsideration in light of *Manuel*, denied leave to appeal "[i]n all other respects[.]" *Rocafort II*. Consequently, I would adopt and incorporate by reference *Rocafort I* with respect to issues 2 and 3.

I also note that the MMMA was amended by 2016 PA 283, which was adopted after *Rocafort I* was issued, becoming effective on December 20, 2016. "Generally, statutes are presumed to operate prospectively unless the contrary intent is clearly manifested." *People v Kolanek*, 491 Mich 382, 396; 817 NW2d 528 (2012) (citation and quotation marks omitted). But the Legislature explicitly stated its intent that parts of the amendatory act applied retrospectively:

> This amendatory act clarifies ambiguities in the law in accordance with the original intent of the people, as expressed in section 2(b) of the Michigan medical marihuana act, 2008 IL 1, MCL 333.26422:
>
> * * * * *
>
> This amendatory act is curative and *applies retroactively as to the following: clarifying the quantities and forms of marihuana for which a person is protected from arrest*, precluding an interpretation of "weight" as aggregate weight, and excluding an added inactive substrate component of a preparation in determining the amount of marihuana, medical marihuana, or usable marihuana that constitutes an offense. Retroactive application of this amendatory act does not create a cause of action against a law enforcement officer or any other state or local governmental officer, employee, department, or agency that enforced this act under a good-faith interpretation of its provisions at the time of enforcement. [2016 PA 283, Enabling § 2 (emphasis added).]

Pertinent to this case, the MMMA as amended by 2016 PA 283 makes substantive changes in the definition of "usable marihuana," which previously was defined by MCL 333.26423(k) as " 'the dried leaves and flowers of the marihuana plant, and any mixture or preparation thereof, but does not include the seeds, stalks, and roots of the plant.' " *Carruthers*, 301 Mich App at 597. As amended by 2016 PA 283, MCL 333.26423(n) provides that "usable marihuana means the dried leaves, flowers, plant, resin, or extract of the marihuana plant, but does not include the seeds, stalks, and roots of the plant." See *Manuel*, 319 Mich App at 301. As amended, the word "dried" in the definition of "usable marihuana" only modifies "leaves." Consequently, modified by 2016 PA 283, not all "usable marihuana" under the MMMA must be "dried." Rather, "usable marihuana" includes "dried leaves," but it also includes substances that are presumably liquids, including "plant resin, or extract of the marihuana plant[.]" Further, the adjective "dried" is separated from the word "flowers" by a comma. This grammatical context suggests that while marijuana leaves must be dried to be usable, harvested flowers need not be. See *People v Beardsley*, 263 Mich App 408, 412-413; 688 NW2d 304, 306 (2004) ("Punctuation

is an important factor in determining legislative intent, and the Legislature is presumed to know the rules of grammar."); *Dale v Beta-C, Inc*, 227 Mich App 57, 69; 574 NW2d 697 (1997) ("Proper syntax provides that commas usually set off words, phrases, and other sentence elements that are parenthetical or independent. . . . Moreover, it is a general rule of statutory, as well as grammatical, construction that a modifying clause is confined to the last antecedent unless a contrary intention appears.").

In this case, defendant was a qualifying patient, § 4(a), MCL 333.26424(a), and a registered primary caregiver under § 4(b), MCL 333.26424(b), of 5 qualifying patients. On the day she was arrested, defendant had recently harvested 5.8 pounds of marijuana from the 34 plants she was cultivating and put the harvested marijuana into canisters to dry. Subsections 4(a) and 4(b) of the MMMA, at the time of defendants arrest provided, in pertinent part:

> (a) A qualifying patient . . . shall not be subject to arrest, prosecution, or penalty in any manner . . . for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of *marihuana* that does not exceed 2.5 ounces of *usable marihuana*, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. . . .

> (b) A primary caregiver . . . shall not be subject to arrest, prosecution, or penalty in any manner . . . for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act, provided that the primary caregiver possesses an amount of *marihuana* that does not exceed:[1]

> (1) 2.5 ounces of *usable marihuana* for each qualifying patient. . . .

> (2) for each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility . . . . [MCL 333.26424; emphasis added.]

Before trial, defendant moved the trial court to dismiss the charges pursuant to § 4 of the MMMA, MCL 333.26424(b). The trial court dismissed her motion because it found that the marijuana seized from the house was above the amount of usable marijuana permitted under § 4. After conducting an evidentiary hearing on defendant's motion, the trial court found that

---

[1] This last clause of § 4(b) between April 1, 2013 and December 19, 2016, reads as follows: "This subsection applies only if the primary caregiver possesses an amount of marihuana that does not exceed:" 2012 PA 512. As part of the clarifying and retrospective 2016 PA 283, this cause was again amended to read: "This subsection applies only if the primary caregiver possesses * * * marihuana *in forms and amounts* that do not exceed any of the following:" (Emphasis added).

although the harvested marijuana may not have been dried to the ideal extent, it was "largely dried." Consequently, the court concluded it was "usable marihuana." The trial court recognized that defendant could lawfully possess up to 15 ounces of "usable marihuana" and that the 5.8 pounds of "largely dried" marijuana that the court found to be "usable marihuana" that defendant possessed clearly exceeded the amount allowed under subsections 4(a) and 4(b), and so the trial court denied defendant's § 4 motion.

In this Court's previous opinion, the Court concluded that "the trial court did not clearly err in finding that the seized marijuana was dried, and thus usable under the MMMA. Therefore, the trial court did not abuse its discretion by denying defendant's motion, which result was within the range of principled outcomes." *Rocafort I* at 3, citing *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012), and *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). I now conclude, on reconsideration in light of *Manuel*, 319 Mich App at 301-303, that the trial court erred in finding that the 5.8 pounds of marijuana that defendant possessed was "usable marihuana." Nevertheless, the trial court reached the right result even if its reasoning were wrong because defendant possessed more marijuana than permitted by § 4(a) and § 4(b).[2] See *People v King*, 297 Mich App 465, 475; 824 NW2d 258 (2012) ("[T]his Court will not reverse a trial court decision when the lower court reaches the correct result even if for a wrong reason.")(Citation and quotation marks omitted). With respect to the criminal offenses which defendant was convicted of violating, I believe it is irrelevant whether all, part or none of the 5.8 pounds of marijuana was "usable marihuana" as defined by the MMMA. "[W]hat constitutes 'usable marijuana' under the MMMA is irrelevant to what constitutes marijuana for purposes of a punishable crime under MCL 333.7401. The relevant definition is that contained in MCL 333.7106(4)[.]" *People v Ventura*, 316 Mich App 671, 679; 894 NW2d 108 (2016).

"The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law." *Kolanek*, 491 Mich at 394. But § 4 of the MMMA grants broad immunity to limited qualifying persons to possess and use for medical purposes limited amounts of a specifically defined subset of illegal "marihuana," MCL 333.7106(4), i.e., "usable marihuana," MCL 333.26423(n). *Kolanek*, 491 Mich at 394-395; *Carruthers*, 301 Mich App at 597-598; MCL 333.26424(a) & (b). In this case, defendant may establish immunity under § 4 if she produces a preponderance of the evidence showing that at the time of the charged offenses she

(i) possessed a valid registry identification card,

(ii) complied with the requisite volume limitations of § 4(a) and § 4(b),

(iii) stored any marijuana plants in an enclosed, locked facility, and

---

[2] In defendant's situation, she would be permitted by possess up to 72 marijuana plants and up to 15 ounces of usable marijuana. See *People v Hartwick*, 498 Mich 192, 219 n 54; 870 NW2d 37 (2015). There is no dispute the number of marijuana plants under cultivation was lawful.

(iv) was engaged in the medical use of marijuana[.] [*People v Hartwick*, 498 Mich 192, 201; 870 NW2d 37 (2015).]

Defendant must satisfy her burden of proof as to all four elements and that with respect to element (ii) at issue in this case, it is an "all-or-nothing proposition." *Id*. at 203, 218-219.

While the trial court erred in finding that all of the 5.8 pounds of marijuana was "usable marihuana," as defined by the MMMA, she still possessed an amount of "marihuana"—as defined in MCL 333.7106(4) and incorporated in the MMMA by MCL 333.26423(e)—well in excess of the 15 ounces permitted under § 4(a) and § 4(b) of the MMMA. These subsections permit a "qualifying patient [to] possesses an amount of *marihuana* that does not exceed . . . 2.5 ounces of *usable marihuana*," § 4(a),[3] and a "primary caregiver [may] possesses *marihuana* in forms and amounts that do not exceed any of the following: For each qualifying patient to whom he or she is connected through the department's registration process, a combined total of 2.5 ounces of usable marihuana . . . ." § 4(b), as amended by 2016 PA 283. The essence of these volume limitations concerning "marihuana" and "usable marihuana" as found in § 4(a) and § 4(b) of the MMMA were the same before the enactment of 2016 PA 283. See *Carruthers*, 301 Mich App at 608-609. This Court explained:

> Notably, neither of these provisions conditions its immunity on the qualifying patient's or primary caregiver's possessing an amount of *usable marijuana* that does not exceed 2.5 ounces. If they had wished to do so, the drafters of the MMMA could easily have employed such simple and readily understood language. Instead, each of these provisions conditions its immunity on the qualifying patient's or primary caregiver's possessing "an amount of *marihuana* that does not exceed . . . 2.5 ounces of *usable marihuana* . . . ." MCL 333.26424(a) and (b)(1) (emphasis added). [*Carruthers*, 301 Mich App at 609.]

The *Carruthers* Court went on to further explain the critical importance of recognizing this difference when analyzing claims of immunity under § 4:

> This distinction is critical . . . because it demonstrates that the drafters of the MMMA chose to provide that, in evaluating a § 4 immunity claim, consideration must be given not only to the amount of usable marijuana that is possessed but, additionally, to the amount of marijuana that is possessed. In other words, consideration must also be given to the possession of marijuana that does not fit within the statutory definition of usable marijuana. This is consistent with the MMMA's use of the term of art "usable marihuana" to define that subset of marijuana that may be possessed in allowed quantities for purposes of an immunity analysis under § 4 of the MMMA.

---

[3] 2016 PA 283 adds to the volume calculations under § 4(a) and § 4(b), "usable marihuana equivalents" concerning "marihuana infused products," which may be combined with "usable marihuana" to reached the permitted volume a qualifying patient or a primary caregiver may possess. These newly defined subsets of "marihuana" are not at issue in this case.

In short, the question of whether a possessor of marijuana possesses an allowed quantity of usable marijuana is only the beginning of the relevant inquiry under § 4. A further pertinent and necessary inquiry, for purposes of a § 4 analysis, is whether that person possesses *any* quantity of marijuana that does *not* constitute usable marijuana under the term-of-art definition of the MMMA. If so, and without regard to the quantity of usable marijuana possessed, the person then does not possess "an amount of *marihuana* that does not exceed . . . 2.5 ounces of *usable marihuana* . . . ." MCL 333.26424 (a) and (b)(1) (emphasis added). Instead, he or she then possesses an amount of marijuana that is in excess of the permitted amount of usable marijuana. In other words, the language establishing limited immunity in § 4 of the MMMA expressly conditions that immunity on the person possessing *no* amount of marijuana that does not qualify as usable marijuana under the applicable definitions. [*Carruthers*, 301 Mich App at 609-610.]

Consequently, applying the analysis explained in *Carruthers*, I find that although the trial court may have erred by finding that *all* of the 5.8 pounds of marijuana that defendant possessed was "usable marihuana" because not completely "dried," *Manuel*, 319 Mich App at 301-303, the trial court's error was harmless because defendant still possessed an amount of "marihuana"—see MCL 333.26423(e) and MCL 333.7106(4)—that exceeded the "the requisite volume limitations of § 4(a) and § 4(b)." *Hartwick*, 498 Mich at 201, 217. As noted, this analysis is reinforced by the enactment of 2016 PA 283, providing in enabling § 2 that the act "clarifies ambiguities . . . and applies retroactively as to the following: clarifying the quantities and forms of marihuana for which a person is protected from arrest . . . ." To the extent that anything in *Manuel* is to the contrary, this Court is bound to follow *Carruthers*, MCR 7.215(J)(1),[4] and the plain language of the MMMA. I do not believe the *Manuel* panel possessed the authority to overrule *Carruthers* without having convened a special panel of this Court. Nor do I read anything in the Supreme Court's order of remand in this case that overrules *Carruthers*. I have reconsidered this Court's prior opinion in light of *Manuel* as instructed by the Supreme Court's remand order, and having done so, I would, for the reasons discussed already, affirm the trial court's ruling denying defendant's § 4 immunity claim.

Finally, as indicated above, I adopt this Court's previous analysis of defendant's remaining issues.

I would affirm.

/s/ Jane E. Markey

---

[4] "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCR 7.215(J)(1).