*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AMANDA ELAINE JOSLIN,

Defendant-Appellant.

UNPUBLISHED
September 17, 2019

No. 341554
Wayne Circuit Court
LC No. 16-000143-01-FH

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted following a bench trial of possession with the intent to deliver marijuana less than 5 kilograms, MCL 333.7401(2)(d)(*iii*). The trial court fined defendant $4,000 but did not impose a jail sentence. Defendant now appeals as of right. For the reasons set forth in this opinion, we vacate defendant's conviction.

## I. BACKGROUND

Beginning in June or July 2014, Detective Brian Zinser began investigating the location at issue in this case, which Zinser described as a "marijuana dispensary." Zinser conducted surveillance at the location approximately 8 to 10 times. Sometimes the surveillance was short, only about an hour, and other times it lasted as long as 10 hours. During the course of his investigation, he had made contact with individuals leaving this location with a white paper bag containing what he believed to be marijuana. According to Zinser, these contacts occurred on September 4, 2014, March 16, 2015, and March 17, 2015.

Specifically, Zinser testified that he was conducting surveillance on March 3, 2015, and he saw defendant get "dropped off in front of the business" and go in the front door. Zinser did not recall how long his surveillance lasted that day, and he did not give any testimony about how long defendant remained inside the building. He testified that he did not observe defendant enter the building on any of the other occasions when he was conducting surveillance. Zinser stated that during his surveillance on March 3, 2015, he saw approximately 15 to 20 people leave the location holding a white paper bag.

On March 19, 2015, the police executed a search warrant for the premises. At trial, testimony about the search was given by Detective Daniel MacArthur, who was one of the officers involved in executing the search warrant. The location in question was contained within a strip mall and consisted of a waiting room, a reception area, two offices, and two other rooms, one of which MacArthur described as a "safe room."

MacArthur testified that there was a safe containing "a green leafy substance," which was divided up and stored inside multiple separate plastic containers with lids or large plastic bags. MacArthur confiscated the green leafy substance. He testified that he could tell by the odor that it was marijuana. In the reception area display case, police also found more of the green leafy substance and green plants in plastic trays. In total, police confiscated approximately eight pounds of the green leafy substance during the search. MacArthur testified that he also confiscated the plants because, based on his training and experience, he believed they were marijuana plants. A total of 61 plants were found, 10 of which were selected at random by the police and subjected to a field test known as the Duquenois-Levine test.[1] MacArthur testified that these field test results were positive for "THC"[2] or marijuana. Melissa Earle, a forensic scientist employed by the Michigan State Police who testified as an expert in chemistry and forensic science, testified that she determined that the green leafy substance was marijuana based on her visual and chemical analyses. Her chemical testing also consisted of the Duquenois-Levine test, and her visual analysis consisted of microscopic and macroscopic examination of the material.

Detective MacArthur also found 300 plastic vials or containers in a freezer or a refrigerator in the building. George Chirackal, a forensic scientist with the Michigan State Police who testified as an expert in forensic chemistry, testified that he tested the substance from within one of these vials and concluded that it contained THC.[3] Chirackal further explained that THC "could have come from marijuana" and that THC is a "compound of marijuana." MacArthur also found approximately $6,600 in the safe room, as well as a digital scale and "Cannabis Oil Syringes."

MacArthur opined at trial that on the basis of his training and experience, the amount of marijuana discovered at the location and the manner in which it was packaged indicated that it was for sale and not merely for personal use. He admitted, however, that he did not know how much someone using medical marijuana would possess for personal use.

---

[1] George Chirackal, testifying as an expert in forensic chemistry, testified that the Duquenois-Levine test returned positive results when cannabinoids were present and that not all cannabinoids are controlled substances.

[2] Delta-1-tetrahydrocannabinol.

[3] Chirackal's testing included the Duquenois-Levine test, as well as a gas chromatography mass spectrometry test and a gas chromatography test. Chirackal explained that these last two tests confirmed the presence of THC, which is itself a form of cannabinoid.

MacArthur testified that defendant was not present at the location during the execution of the search warrant and that the first time he ever saw defendant was at her preliminary examination in this case. However, on a desk in the safe room, MacArthur found a DTE energy bill addressed to defendant at the address of the location in question. Inside the bill envelope there was a DTE energy "bill payment coupon" containing a notice of intent to shut off service on March 18, 2015. The bill had an account number, and it indicated that there was a past due balance of $205.49.

The trial court found defendant guilty of possession with intent to deliver marijuana on an aiding-and-abetting theory. First, the trial court discussed the evidence found during the search on March 19, 2015, and the trial court concluded that the evidence showed that someone committed the offense of possessing marijuana with the intent to deliver. The trial court stated its findings as follows:

> I do find that based on the testimony presented in this case as it applies to [the leafy material and substance in the vials], that the substance from the premises was in fact marijuana, and I do find that . . . there were scales that were found at the location . . . along with . . . the syringes for use to inject THC.
>
> I do find certainly that the photographs[4] . . . demonstrate as well . . . that the amount and quantity and how it was packed and found in that facility was a deliverable amount. It was not for personal use. It was in fact marked for sale.
>
> And certainly it does appear [as shown in a photograph], the safe that was in the facility that was a safe that one could reasonably conclude was used for the financial business of selling and dispensing marijuana.
>
> So the Court does believe that there is evidence established beyond a reasonable doubt that the offense of possession with the intent to deliver marijuana was committed by someone.

Second, the trial court considered whether, before or during the crime, defendant "did something to assist in the commission of the crime." The trial court found:

> [A photograph] as introduced in this particular matter shows the office area in that facility. It does show a utility bill that is there or with other items. The utility bill is in [defendant's] name.
>
> Testimony from Officer MacArthur I believe it was indicated that on that date he had seen [defendant] going into [the building] and enter that particular facility.

---

[4] Photographs depicting the inside of the location and evidence described by MacArthur were admitted as exhibits at trial.

So there certainly is evidence to establish or show that [defendant] was at that location and not just like many of the others who were seen to go in and come out in a very short period of time duration.

The evidence I think only reasonably leads to the conclusion that this was a facility under the control of [defendant]. She was not just someone who happen[ed] to be in that particular facility on one particular time.

The utility bill certainly demonstrates a sufficient dominion and control over that facility in this Court's view.

It also is something to this Court to see that the photographs clearly indicate that what is being possessed on the inside of that facility is marijuana, and it is for the purpose of dispensing to other individuals and selling it.

This is not a situation where [defendant] could realistically claim that she did not know what was going on. And in light of the extent of the volume of marijuana that was there, it does seem clear to this Court that she was in control of that particular facility for the distribution of marijuana.

Third, the trial court considered whether defendant intended the commission of the alleged crime or knew that the other person intended the commission of the crime, or that the crime alleged was the natural and probable consequence of the commission of the crime intended. In concluding this element had been established, the trial court found:

It is very clear to anybody looking at the photos introduced in this matter, that clearly marijuana distribution was going on at that particular facility.

The question is, and the Court does take into account the other legal instructions that the Court must consider with regards to aiding and abetting.

One is the model Jury Instruction 8.4. It doesn't matter how much help, advice or encouragement the defendant gave. However, you must decide whether the defendant intended to help another commit the crime, whether that helps, advice or encouragement did actually help, advice or encourage.

Likewise the Court does consider, as required model Jury Instruction 8.5, even if the defendant knew the alleged crime was planned or was being committed, the mere fact that she's present when it was committed is not enough to prove that the defendant aided and abetted in committing it.

In this particular case I do not find that the defendant . . . was merely present, that her help and encouragement was there in terms of providing the facility from which the marijuana could be possessed for ultimate sale.

So for the reasons stated with regards to [the possession with intent to deliver charge], the date of the search warrant, which was March 19th of 2015, I do find that the defendant . . . is guilty as charged . . . .

The trial court sentenced defendant as noted previously. After trial, defendant filed a motion for relief from judgment and a new trial, which the trial court denied after sentencing. Defendant now appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues on appeal, among other things, that the evidence was insufficient to support her conviction under an aiding and abetting theory. While this argument is somewhat imprecisely framed in defendant's appellate brief, it is evident to us that this is the fundamental nature of defendant's argument.[5] Specifically, defendant argues that there was no evidence introduced at trial demonstrating that defendant intended the commission of the crime or that she had any knowledge of any criminal activity at the location. Because we find this argument dispositive, we address it first.

## A. STANDARD OF REVIEW

This Court reviews "de novo a challenge to the sufficiency of the evidence in a bench trial, viewing the evidence in the light most favorable to the prosecution and determining whether the trial court could have found the essential elements proved beyond a reasonable doubt." *People v Ventura*, 316 Mich App 671, 678; 894 NW2d 108 (2016); see also *People v Reese*, 491 Mich 127, 130, 139; 815 NW2d 85 (2012). "A trial court's findings of fact may not be set aside unless they are clearly erroneous." *Reese*, 491 Mich at 139. "A ruling is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted). "The requirements of the aiding and abetting statute[, MCL 769.39,] are a question of law that this Court reviews de novo." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

## B. ANALYSIS

Defendant was convicted of possessing marijuana with the intent to deliver in violation of MCL 333.7401, which provides in pertinent part as follows:

> (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form . . . .

> (2) A person who violates this section as to:

> * * *

---

[5] We note that the prosecution agrees with this assessment of defendant's argument.

(d) Marihuana, a mixture containing marihuana, or a substance listed in section 7212(1)(d) is guilty of a felony punishable as follows:

\* \* \*

(*iii*) If the amount is less than 5 kilograms or fewer than 20 plants, by imprisonment for not more than 4 years or a fine of not more than $20,000.00, or both.

As applicable to the instant case, "[t]o be convicted of the charge of possession with intent to deliver, the defendant must have knowingly possessed a controlled substance, intended to deliver that substance to someone else, and the substance possessed must have actually been [marijuana] and defendant must have known it was [marijuana]." *People v Johnson*, 466 Mich 491, 499-500; 647 NW2d 480 (2002).

The trial court in this case specifically indicated that it found defendant guilty under an aiding and abetting theory. Contrary to defendant's argument on appeal, it is inconsequential that the information did not allege an aiding and abetting theory as part of the count for which defendant was convicted. Aiding and abetting is merely "a theory of prosecution that permits the imposition of vicarious liability for accomplices" and is not itself a "separate substantive offense." *Robinson*, 475 Mich at 6 (quotation marks and citation omitted). The aiding and abetting statute, MCL 767.39, provides as follows:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Our Supreme Court has set forth the three elements necessary to convict a defendant under an aiding and abetting theory:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*Robinson*, 475 Mich at 6 (quotation marks and citation omitted; alteration in original).]

In this case, the trial court's conclusion that the second and third elements were met was premised on its finding that defendant gave help and encouragement by providing a facility from which to distribute marijuana and that defendant knew about the principal's intent to commit criminal acts because of defendant's dominion and control over the facility. These findings were in turn based primarily on the trial court's findings that the utility bill in defendant's name and discovered on the premises sufficiently demonstrated defendant's "dominion and control over that facility" and that "there certainly is evidence to establish or show that [defendant] was at that location and not just like many of the others who were seen to go in and come out in a very short period of time duration." The trial court reasoned that because there was such a large quantity of marijuana at the location and defendant exerted such significant control over the facility,

defendant must have known that the location was being used for criminal activity involving the possession of marijuana with the intent to deliver it.

However, the trial court's finding regarding defendant's presence inside the location was based on its findings that "[t]estimony from Officer MacArthur" indicated that on the date of the search[6] he saw defendant enter the facility and that defendant "was not just someone who happen[ed] to be in that particular facility on one particular time." These findings are clearly erroneous. MacArthur explicitly testified that defendant was not at the location when the search warrant was executed and that he had never seen defendant before her preliminary examination in this case. Moreover, Zinser testified that he only saw defendant enter the facility one time, on March 3, 2015, after she was "dropped off" in front of the building. There was no testimony about how long defendant stayed, or when she was at the location in relation to when Zinser saw people leaving with white paper bags. While the utility bill may be evidence showing a connection between defendant and the location address, it is not evidence by itself of defendant's knowledge of what was happening inside, of a connection between defendant and marijuana, or of defendant's intent regarding any activity related to marijuana. In short, there was no evidence introduced at trial showing a temporal proximity between defendant being at the building and the large quantity, or any quantity, of marijuana being at the building. The trial court assumed this connection existed without any evidence to this effect actually being admitted at trial.

While there need not necessarily be evidence that the defendant had a "shared specific intent to commit the crime of an accomplice" in order to sustain a conviction under an aiding and abetting theory, there is still a *mens rea* component to the elements for aider and abettor liability: "evidence of defendant's specific intent to commit a crime or knowledge of the accomplice's intent constitutes sufficient *mens rea* to convict under our aiding and abetting statute." *Robinson*, 475 Mich at 6-7. The *Robinson* Court explained further:

> We hold that a defendant must possess the criminal intent to aid, abet, procure, or counsel the commission of an offense. A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet. Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense. [*Id*. at 15.]

---

[6] In discussing the charge for which defendant was convicted, the trial court specifically focused on March 19, 2015, which was the date of the search and the date on which the crime in that count was alleged to have occurred according to the information. It is clear from our review of the transcript that the trial court believed that there had been testimony that defendant was seen entering the building on the date that the search occurred.

In this case, there was no such evidence introduced at trial. We therefore conclude that on this record, there was insufficient evidence to prove beyond a reasonable doubt that defendant committed the offense of possession with intent to deliver marijuana under an aiding and abetting theory; particularly, the evidence was insufficient to establish the third element necessary to establish culpability on an aiding and abetting theory.[7] Accordingly, we vacate defendant's conviction and sentence.[8]

Vacated.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[7] We recognize that although the trial court separately discussed its findings under each element, many of its findings under the second element were more properly directed toward, and necessarily part of, its conclusions regarding the third element.

[8] In light of this conclusion, we need not consider defendant's numerous additional claims of error. See *People v Murphy*, 321 Mich App 355, 361 n 6; 910 NW2d 374 (2017).