*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee

v

JAYLEN MAURICE MASON,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 344886
Wayne Circuit Court
LC No. 18-000777-01-FH

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of unarmed robbery, MCL 750.350, arguing that the trial court relied on insufficient evidence to support his conviction because two of the witnesses—Davon West (West) and Elexis Johnson (Johnson)—did not provide credible testimony of defendant's identity. We affirm.

## I. UNDERLYING FACTS

At about 10:30 p.m. on September 29, 2017, West was walking home after having spent the evening with his girlfriend—Johnson—at her home. West wore a pair of black and white "Jordan Baron 11s" basketball shoes and spoke with Johnson on his cellular telephone—a gray iPhone SE—after leaving Johnson's home. As he walked, West noticed defendant approaching him from a parking lot on West's left-hand side. West began to walk faster, so the two would not run into each other, and defendant passed behind him. As defendant passed West, a streetlight illuminated defendant and West was able to see defendant's face for about five seconds.[1]

---

[1] Although unsure of defendant's name at the time, West recognized defendant as someone he had seen in the neighborhood and in a Facebook picture he had seen the previous week.

Defendant then began to follow West. Defendant and West walked in the same direction until defendant passed West, providing West with another opportunity to see defendant's face. After passing West, defendant stopped about 30 feet away and began to speak to another man.[2] Because there were no streetlights nearby, West did not see the other man's face. West continued to walk toward the two men as he talked to Johnson on his cellular telephone. As he approached defendant, West noticed defendant was wearing gray Nike Foamposite shoes with lime-green colored soles, black pants, and a silver-gray jacket.

Immediately after passing defendant and the other man, West was struck from behind on the right side of his neck. As West attempted to turn to see who had hit him, he was struck again and dropped his cellular telephone. West fell to the ground, where defendant and the other man kicked and punched him several times while West attempted to protect his face from the blows. Then either defendant or the other man placed his foot on West's neck and directed the other man to remove West's shoes. The robbers took West's shoes and his gray iPhone SE before running away. As they ran off, West identified defendant by his clothing—gray Foamposite shoes, black pants, and a gray jacket—the same clothes West had seen defendant wearing immediately before the robbery. West could also see the bottom of defendant's shoes and they had lime-green colored soles.

West's telephone call to Johnson remained active during the course of the robbery. During their conversation West stopped speaking and Johnson heard what she believed to be West's cellular telephone falling to the ground. After West stopped talking, Johnson heard other people talking and one of them said "Yeah, I got it." When West failed to call her back after the telephone call disconnected, Johnson left the house to search for West. As she was leaving the housing complex—about five minutes after the telephone call ended—Johnson saw defendant walk past her in one of the complex's courtyards. Defendant was wearing a gray jacket and black pants. Johnson also noticed defendant was carrying shoes—a pair of "foams" she had seen him wear before—and he was wearing a pair of black and white "Jordans"—shoes like those West had been wearing when he left Johnson's house earlier in the evening. Johnson began to walk up the service drive when she received a telephone call from West, who was at the gas station using a telephone he had borrowed from a police officer. West told Johnson he had been robbed and that he was at the gas station. In response, Johnson told West that defendant had walked by her wearing West's shoes.

Johnson arrived at the gas station approximately five minutes later. When she arrived, West was speaking with Detroit Police Officer William Cook (Officer Cook). While at the gas station, Johnson told Officer Cook she had just seen defendant wearing West's stolen shoes.[3] Johnson told Officer Cook she recognized defendant from the neighborhood; she saw defendant every day because they shared mutual friends. Johnson repeated her belief that defendant had taken West's shoes.

---

[2] The evidence at trial showed defendant committed the robbery with a conspirator. However, the conspirator was not a party at trial, nor is he a party to this appeal.

[3] Johnson identified defendant using his street name "J Money."

Several days after the robbery, West returned to Johnson's housing complex and saw defendant playing basketball on the complex's basketball court. Defendant was wearing the same type of shoes as those stolen from West. West noticed the bottoms of the shoes were still white and not discolored, indicating they were brand new, and the shoes looked too big for defendant. Further, the shoelaces were knotted in the distinctive way West used on all of his shoes. These three factors led West to believe defendant was wearing West's stolen shoes.

On October 6, 2017, West gave a statement describing the men who robbed him to Detective Lawrence Mitchell (Detective Mitchell). West provided physical descriptions of defendant and the other man, as well as a description of what they were each wearing the night of the robbery. West also told Detective Mitchell he had seen defendant in several Facebook posts. On the basis of this information, Detective Mitchell created two photographic lineups, each consisting of six photographs. West identified defendant in the first photographic lineup and he identified the other man in the second lineup. After his identifications, West wrote a handwritten note on the photographic lineups indicating that he was accusing defendant and the other man of hitting him and stealing his shoes and iPhone.

## II. STANDARD OF REVIEW

A challenge to the sufficiency of the evidence in a bench trial is reviewed de novo. *People v Ventura*, 316 Mich App 671, 678; 894 NW2d 108 (2016). The evidence is considered in the light most favorable to the prosecution to determine whether the trial court could have found the essential elements proved beyond a reasonable doubt. *Id*. Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense. *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018) (quotation marks and citations omitted). And we "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Furthermore, we will not set aside a trial court's finding of fact in a bench trial unless clearly erroneous. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

## III. ANALYSIS

Defendant argues that the evidence was insufficient to prove his identity as one of the unarmed robbers because the testimony provided by West and Johnson was not credible. We disagree.

Clearly, identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). That is, the prosecution must prove beyond a reasonable doubt that a specific defendant was the person who committed the alleged crime. *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979). Either direct testimony or inferences drawn from circumstantial evidence can be sufficient evidence to prove this element. *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016); *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). And "positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

Defendant argues that West and Johnson were not credible witnesses and could not establish that defendant stole West's shoes and iPhone. But, again, issues of the weight and credibility of evidence, including witness testimony, are questions for the trier of fact. *Kanaan*, 278 Mich App at 619. This principle also applies to identification testimony. *Davis*, 241 Mich App at 700. As a question for the trier of fact, the credibility of identification testimony is not one a reviewing court may "resolve anew." *Id*. Further, when a defendant challenges his conviction on the basis of the sufficiency of the evidence, all conflicts in the evidence are resolved in the prosecution's favor. *Kanaan*, 278 Mich App at 619. As a result, when reviewing defendant's conviction of unarmed robbery, we must resolve any inconsistencies or conflicts in the evidence in the prosecution's favor and may not revisit the issue of the credibility of West or Johnson.

Sufficient evidence supported defendant's conviction. The evidence demonstrated that West saw defendant's face and clothing before the robbery. Although he did not see defendant while being physically beaten, West saw defendant run away after the robbery and identified defendant by his clothing. Further, in the days after the robbery, West saw defendant wearing West's stolen shoes. West also positively identified defendant through a photographic lineup and at trial—indicating in the latter instance he was "100% sure" defendant robbed him. Similarly, Johnson saw defendant, minutes after the robbery, wearing West's shoes. While there were inconsistencies in West's testimony, and Johnson's testimony was uncorroborated, such discrepancies must be resolved in the prosecution's favor. Under this deferential standard, the identifications West and Johnson made of defendant, and the inferences drawn from the circumstantial evidence provided by their testimony, provided sufficient evidence for the trial court to find beyond a reasonable doubt that defendant committed the unarmed robbery. Consequently, we also reject defendant's due process argument. See *People v Breck*, 230 Mich App 450, 456; 584 NW2d 602 (1998).

Defendant also argues that the trial court's findings of fact and conclusions of law failed to adequately address the inconsistencies between Johnson's testimony and that of Officer Cook. Under MCR 6.403, when a defendant waives his right to a jury trial, the trial court must "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." The trial court must also "state its findings and conclusions on the record . . . ." *Id*. "Factual findings are sufficient as long as it appears the trial court was aware of the issues in the case and correctly applied the law. The court need not make specific findings of fact regarding each element of the crime." *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992) (citations omitted). "A judge's failure to find the facts does not require remand where it is manifest that he was aware of the factual issue, that he resolved it and it would not facilitate appellate review to require further explication of the path he followed in reaching the result as, for example, where the only factual issue is identification." *People v Jackson*, 390 Mich 621, 627 n 3; 212 NW2d 918 (1973).

In this case, the trial court fulfilled the requirements under MCR 6.403. Because defendant waived his right to a jury trial, the trial judge assumed the task of assessing and weighing issues of witness credibility as the finder of fact at trial. When delivering the verdict, the trial judge noted, on the record, that she had instructed herself on the relevant law concerning identification and the several factors she needed to consider when assessing identification

evidence. The trial judge also stated that she was applying these factors to the identifications West and Johnson made of defendant.

As defendant notes, the trial judge did acknowledge two specific issues with West's testimony when making her factual findings. First, West's testimony that the photographic lineup consisted of black and white photographs, as opposed to the color photographs presented in evidence at trial. Second, West's statement that Johnson told him defendant ran by her while wearing West's shoes was inconsistent with Johnson's testimony that defendant walked by her. Defense counsel had argued that these two inconsistencies in West's testimony undermined the credibility of West and Johnson as witnesses. Further, the trial judge acknowledged that she did not know if West's testimony, on its own, would have been sufficient to prove guilt beyond a reasonable doubt. The trial judge's analysis, however, did not end there. The trial judge found that West had several opportunities to observe defendant, both before and after the robbery, and recognized defendant as one of his assailants by defendant's clothing. The trial judge stated that she found Johnson to be "very credible." Thus, the trial judge found that Johnson's testimony, when considered with West's testimony, proved defendant's guilt beyond a reasonable doubt.

In summary, while the trial judge did not directly address any inconsistencies between the testimonies of Johnson and Officer Cook, she provided an explanation for her guilty verdict by stating that she found Johnson's testimony and identification of defendant to be credible. A review of the record shows the trial judge was aware of the factual issues about the witnesses' identification of defendant, examined and applied the relevant law, and resolved these issues— ultimately finding defendant guilty. Thus, we reject defendant's argument that the trial court failed to meet the requirements of MCR 6.403.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro